## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

ONWY C. UZOIGWE,

      *Plaintiff*,

    **v.**                             **Civil No.: 1:23-cv-02572-JRR**

VERIZON MARYLAND LLC, *et al.*,

      *Defendants*.

## MEMORANDUM OPINION

Pending before the court are Defendants Alfred Christian, Jr., Jeffrey S. Douglas, and Verizon Maryland LLC's (collectively "Verizon Defendants") Motion to Dismiss (ECF No. 99); Defendants Communications Workers of America AFL-CIO, Vernon Michael Constantine, Communications Workers of American AFL-CIO District 2-13, and Communications Workers of America Local 2100's (collectively "Union Defendants") Motion to Dismiss (ECF No. 113); and *pro se* Plaintiff Onwy Uzoigwe's three "Motion Request[s] for the Court to take Judicial Notice" (ECF Nos. 101, 104, 123), two "Motion[s] for Leave of Court to File a Sur-Reply" (ECF Nos. 111, 121), "Motion Request for this Court to Put Defendants on Notice" (ECF No. 109), "Motion Requesting Clarification re: [ECF] 131 Memorandum Opinion and Order" (ECF No. 132); "Motion for Leave to File Second Consolidated Amended Complaint" (ECF No. 133); and Motion for Clerk's Entry of Default (ECF No. 138). No hearing is necessary. Local Rule 105.6 (D. Md. 2023).

# I.    <u>BACKGROUND</u>[1]

Plaintiff's allegations arise from his employment at, and termination from, Verizon Maryland LLC ("Verizon"), and from his labor union, Communications Workers of America AFL-CIO's ("CWA"), refusal to pursue arbitration of his grievances.

### A.    *Plaintiff's Tenure at Verizon*

Plaintiff began working as a Service Technician for Verizon on January 4, 2021. (ECF No. 91 ¶ 41.) Plaintiff is a Black man of Nigerian origin. *Id.* ¶ 1. During his employment, Plaintiff's supervisors were Defendant Alfred Christian and Defendant Jeffrey Douglas. *Id.* ¶¶ 3, 4. Plaintiff perceived both men to be "Caucasian" but was later informed that Mr. Christian was "half-black, half white." *Id.* ¶ 43. Early in his tenure at Verizon, Plaintiff joined CWA. *Id.* ¶ 41. Defendant Vernon Mike Constantine served as the Executive Vice President of CWA Local 2100, Plaintiff's labor representative. *Id.* ¶¶ 7, 8. Defendant Mike Somers served as the International Union Representative for District 2-13, Plaintiff's district. *Id.* ¶¶ 6, 9.

On April 26, 2022, Plaintiff reported exposure to COVID-19 and, as a result, remained home from work until May 9. (ECF No. 91 ¶¶ 44, 45.) At the insistence of Mr. Christian and Mr. Constantine, Plaintiff used sick leave allotted by the Family and Medical Leave Act ("FMLA") for this absence. *Id.* ¶ 46. On the day of his return, Plaintiff discovered a drill assigned to his work vehicle was missing. *Id.* ¶ 45. Plaintiff reported the missing drill to Mr. Christian. *Id.* Two days later, after completing his route in his work vehicle, Plaintiff cleaned the front portion of the van and started, but did not finish, cleaning the back portion. *Id.* ¶ 47. He sent a picture of the interior of his van to Mr. Christian. *Id.*

---

[1] For purposes of resolving the Motions to Dismiss, the court accepts as true all well-pled facts set forth in the Complaint. (ECF No. 91.) *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017).

On May 16, Plaintiff felt Mr. Christian was "harassing" and "being irate" at him. (ECF No. 91 ¶ 48.) Plaintiff described Mr. Christian's behavior to CWA representative, Jason Chesney. *Id*. The following day, Mr. Christian called a meeting with Plaintiff and another CWA representative. *Id*. ¶ 49. During that meeting, Mr. Christian "yelled at Plaintiff telling Plaintiff to go home." *Id*. Afterwards, Plaintiff filed a formal grievance with CWA Local 2100. *Id*. ¶ 51. CWA representatives Mr. Chesney and Mr. Constantine called Plaintiff to discuss the grievance but took no further action. *Id*.

On May 20, Plaintiff spoke by phone with Verizon Director Terry Minor about his interaction with Mr. Christian. (ECF No. 91 ¶ 54.) Mr. Minor scheduled a meeting with Mr. Christian and Plaintiff, but it was later canceled. *Id*. Plaintiff created a 52-page document "detailing the harassment" he alleged he experienced from Mr. Christian and sent it to Mr. Douglas, Mr. Chesney, and Mr. Constantine. *Id*. ¶¶ 52, 56. Plaintiff then spoke separately with Mr. Douglas and Mr. Constantine about the document. *Id*. ¶¶ 57, 60. After Plaintiff told both that he believed Mr. Christian was discriminating against him due to his race, Mr. Douglas and Mr. Constantine each informed Plaintiff that Mr. Christian was half-Black. *Id*.

On October 17, 2022, Plaintiff received a five-day suspension for receiving a red light ticket. (ECF No. 91 ¶ 65.) Upon return from the suspension, Mr. Christian and another manager informed Plaintiff they had investigated his conduct on October 13 and 15 for theft of time and departure from job responsibilities, and that, as a result of the investigation, he was suspended indefinitely. *Id*. ¶¶ 66, 100. Then, on November 7, Mr. Christian asked Plaintiff to return to work and gave him a termination document bearing Mr. Douglas' signature. *Id*. ¶ 67.

### B.  Plaintiff's Grievance Procedure

Immediately after his termination, Plaintiff spoke with Mr. Chesney and Mr. Constantine. (ECF No. 91 ¶ 68.)  While Plaintiff maintained that his termination was related to his allegations of race-based harassment, Mr. Constantine disagreed and informed Plaintiff that the termination document did not reference the harassment allegations.  *Id*.  Plaintiff then filed grievance submissions.  *Id*. ¶ 69.  Plaintiff's first step grievance hearing occurred on November 18, 2022. *Id*. ¶ 71.  Mr. Chesney, Mr. Douglas, and Mr. Christian attended.  *Id*.  During the meeting, the parties discussed Plaintiff's actions on October 13 and 15, 2022.  *Id*. ¶ 72.  Verizon denied Plaintiff's grievance.  *Id*. ¶ 75.

In the six-month interim between first and second step grievance, Plaintiff applied for and received unemployment benefits.  *Id*. ¶ 78.  The second step grievance occurred by video conference on February 14, 2023.  *Id*. ¶¶ 81, 85.  During the meeting, Plaintiff again discussed his actions on October 13 and 15, and, again, he did not discuss his earlier allegations of race-based harassment.  *Id*. ¶ 86.  Verizon denied Plaintiff's second step grievance.  *Id*. ¶ 87.

On July 8, 2023, Plaintiff spoke with Mr. Somers.  (ECF No. 91 ¶ 88.)  Mr. Somers informed Plaintiff that CWA Local 2100 would not submit Plaintiff's case for arbitration.  *Id*.  On September 11, 2023, Plaintiff received a formal letter from CWA Local 2100 reiterating that the Union would not submit Plaintiff's case to arbitration.  *Id*. ¶ 90.

### C.  Plaintiff's Formal Complaints with MCCR and EEOC

On January 6, 2023, Plaintiff filed charges with the Maryland Commission on Civil Rights ("MCCR") and the United States Equal Employment Opportunity Commission ("EEOC").  *Id*. ¶¶ 18, 79.  Plaintiff additionally submitted a charge with the National Labor Relations Board against

CWA Local 2100 and Verizon "for committing Unfair Labor Practices." *Id.* ¶ 89. Plaintiff received a Right to Sue letter from the EEOC on September 5, 2023. *Id.* ¶ 23.

### D. Procedural Posture

On September 21, 2023, Plaintiff filed the instant action against Defendants Communications Workers of America Local 2100, Jeffrey S. Douglas, and Verizon Maryland LLC. (ECF No. 1.) On November 19, 2023, Plaintiff filed an action against the same Defendants in the Circuit Court for Howard County, Maryland. (Case No. 23-cv-03489, ECF No. 3.) Defendants removed the state court action to this court.[2] (Case No. 23-cv-03489, ECF No. 1.) By order of August 20, 2024, this court consolidated the two actions and docketed Plaintiff's Consolidated Amended Complaint (ECF No. 91, the "Complaint").

In his Complaint, Plaintiff asserts the following counts:

> Count I: Disparate Treatment (Harassment) under 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964 ("Title VII") (42 U.S.C. §§ 2000e–2000e-17), and the Maryland Fair Employment Practice Act ("MFEPA") (MD. CODE ANN., STATE GOV'T § 20-601, *et seq.*) against Verizon and CWA Local 2100; Conspiracy under 42 U.S.C. § 1985(3) and Aiding and Abetting under Maryland Code, State Government § 20-801 against Jeffrey S. Douglas, Alfred Christian Jr., and Vernon Mike Constantine;

> Count II: Retaliation for Opposing Discrimination under 42 U.S.C. § 1981, Title VII, and MFEPA against Verizon and CWA; Conspiracy under 42 U.S.C. § 1985(3) and Aiding and Abetting under Maryland Code, State Government § 20-801 against Jeffrey S. Douglas, Alfred Christian Jr., and Vernon Mike Constantine;

> Count III: Family and Medical Leave Act ("FMLA") Interference and Retaliation under 29 U.S.C. § 2601, *et seq.*[3] against Verizon and Alfred Christian Jr.;

---

[2] Before consolidation, Plaintiff amended the complaint in Case No. 23-cv-02489 to add Defendant Alfred Christian, Jr. (Case No. 23-cv-03489, ECF No. 52.)

[3] Plaintiff erroneously notes the relevant statute in Count III as 28 U.S.C. § 2601; the FMLA is codified at 29 U.S.C. § 2601.

Count IV: Unlawful Interception of Electronic Communications under 18 U.S.C. § 2510, *et seq.* and Maryland Code, Courts and Judicial Proceedings § 10-401, *et seq.* against Verizon;

Count V: Unlawful Disclosure of Electronic Communications under 18 U.S.C § 2701, *et seq.* and Maryland Code, Courts and Judicial Proceedings § 10-4A-01, *et seq.* against Verizon;

Count VI: Trespass to Chattel against Verizon;

Count VII: Intrusion Upon Seclusion against Verizon;

Count VIII: Libel/ Slander against Verizon, Alfred Christian, Jeffrey S. Douglas, CWA, and Mike Constantine;

Count IX: Intentional Infliction of Emotional Distress against Verizon, Alfred Christian, Jeffrey S. Douglas, CWA, and Mike Constantine;

Count X: Negligent Retention against Verizon;

Count XI: Breach of Duty of Fair Representation against CWA;

Count XII: Breach of Contract under Labor Management Relations Act ("LMRA") § 301 against Verizon.

(ECF No. 1 ¶¶ 103–93.) Plaintiff attaches 30 exhibits to the Complaint. (ECF Nos. 91-1–91-30.)

On October 10, 2024, the Verizon Defendants filed a Motion to Dismiss. (ECF No. 99.) On November 12, the Union Defendants filed a Motion to Dismiss. (ECF No. 113.) Plaintiff opposed both motions and filed motions for leave to file surreply in support of his opposition to both. (ECF Nos. 111, 121.) Additionally, following the Complaint, Plaintiff filed three "Motion Request[s] for the Court to take Judicial Notice" (ECF Nos. 101, 104, 123) and a "Motion Request for this Court to Put Defendants on Notice" (ECF No. 109).

During the pendency of the case, Defendants notified the court of Defendant Jeffrey Douglas' death. (ECF No. 72.) By order of February 2, 2025, pursuant to Federal Rule of Civil Procedure 25(a), the court granted Plaintiff's Motion to Substitute the late Jeffrey S. Douglas with

his personal representative, Leslie Douglas.  (ECF No. 131.)  Following the order, Plaintiff filed a Motion requesting Clarification (ECF No. 132) and a Motion for Leave to File Second Amended Complaint (ECF No. 133).  Defendants opposed the Motion for Leave to Amend.  Finally, on April 23, Plaintiff filed a Motion for Clerk's Entry of Default for want of answer by Leslie Douglas.

## II.   LEGAL STANDARD

### A.  Federal Rule of Civil Procedure 12(b)(6)

A motion asserted under Federal Rule of Civil Procedure 12(b)(6) "test[s] the sufficiency of a complaint;" it does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)).  Therefore, a "Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief."  *Edwards*, 178 F.3d at 244.

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnote omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  "[A] complaint that provides no more than 'labels and conclusions,' or 'a formulaic recitation of the elements of a cause of action,' is insufficient."  *Bourgeois v. Live Nation Ent., Inc.*, 3 F. Supp.

3d 423, 434 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555). "The [c]ourt must be able to deduce 'more than the mere possibility of misconduct'; the facts of the complaint, accepted as true, must demonstrate that the plaintiff is entitled to relief." *Evans v. 7520 Surratts Rd. Operations, LLC*, No. 8:21-CV-01637-PX, 2021 WL 5326463, at *2 (D. Md. Nov. 16, 2021) (quoting *Ruffin v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521, 526 (D. Md. 2015)).

**B. Consideration of Exhibits and Judicial Notice**

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), a court usually does not consider evidence outside of the complaint. A court may consider documents attached to a motion to dismiss if the document is "integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity." *Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (quoting *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)). "An integral document is a document that by its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found. Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d. 602, 611 (D. Md. 2011) (quoting *Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 806 (E.D. Va. 2007)).

"In addition to integral and authentic exhibits, on a 12(b)(6) motion the court 'may properly take judicial notice of matters of public record.'" *Id*. (quoting *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)). Federal Rule of Evidence 201 provides that a court may judicially notice a fact "that is not subject to reasonable dispute because it ... can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201. Pursuant to this rule, "a federal court may consider matters of public record such as documents from prior state court proceedings in conjunction with a Rule 12(b)(6) motion." *Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009).

### C. Federal Rule of Civil Procedure 15

Under Federal Rule of Civil Procedure 15(a), "[a] party may amend its pleading once as a matter of course" within 21 days of serving it, or "if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." FED. R. CIV. P. 15(a)(1). Otherwise, however, "a party may amend its pleading only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2). Rule 15(a) counsels that "[t]he court should freely give leave when justice so requires." *Id.* "The Supreme Court has emphasized that 'this mandate is to be heeded.'" *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "The Fourth Circuit's policy is 'to liberally allow amendment.'" *Lavin v. Safeco Ins. Co. of Am.*, No. SAG 22-1788, 2022 WL 17342051, at *1 (D. Md. Nov. 30, 2022) (quoting *Galustian v. Peter*, 591 F.3d 724, 729 (4th Cir. 2010)). Therefore, "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Johnson*, 785 F.2d at 509; see *Oliver v. Dep't of Pub. Safety & Corr. Servs.*, 350 F. Supp. 3d 340, 345 (D. Md. 2018) (noting that "[g]ranting leave to amend [] is the default under Rule 15").

### III.   <u>ANALYSIS</u>

As an initial matter, the court is ever mindful that pro se filings "must be construed liberally, . . . so as to do substantial justice," and are held to less stringent standards that filings drafted by lawyers. *Elijah v. Dunbar*, 66 F.4th 454, 460 (4th Cir. 2023) (quoting *Erickson v. Paradus*, 551 U.S. 89, 94 (2007); FED. R. CIV. P. 8(f); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "In practice, this liberal construction allows courts to recognize claims despite various

formal deficiencies, such as incorrect labels or lack of cited legal authority." *Wall v. Rasnick*, 42 F.4th 214, 218 (4th Cir. 2022). Such liberal construction, however, does not absolve Plaintiff from pleading a plausible claim, and this court "may not act as an advocate for a self-represented litigant" by "conjur[ing] up" issues not presented. *Desgraviers v. PF-Frederick, LLC*, 501 F. Supp. 3d 348, 351 (D. Md. 2020) (quoting *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 314 (D. Md. 2014), *aff'd*, 584 F. App'x 135 (4th Cir. 2014); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)).

### A. Motions to Dismiss

#### i. Consideration of Exhibits and Motions to take Judicial Notice

As mentioned above, Plaintiff attaches 30 exhibits to the Complaint (ECF Nos. 91-1–91-30) and one exhibit to his response to the Verizon Defendant's Motion to Dismiss (ECF No. 103-1). The exhibits include nine affidavits or declarations that "support and fill in details of [the] facts" alleged in the Complaint. (ECF No. 91 at p. 7.) Use of exhibits for this purpose, namely, to circumvent the page limits imposed by this court's Local Rules, is impermissible.

Aside from affidavits, Plaintiff attaches the EEOC Notice of Right to Sue and MCCR Complaint (ECF No. 91-1); the CWA Arbitration Decision Appeal (ECF No. 91-10); CWA Local 2100 Formation Documents (ECF No. 91-11); documents related to his grievance (ECF Nos. 91-12, 91-13); MCCR proceedings transcript (ECF No. 91-14); grievance hearing transcript (ECF No. 91-15); FMLA leave request (ECF No. 91-16); an email message to Mr. Douglas (ECF No. 91-17); the document he created detailing harassment allegations against Mr. Christian (ECF No. 91-18); Verizon termination letter (ECF No. 91-19); an email message to Mr. Minor (ECF No. 91-20); Verizon's Code of Conduct (ECF No. 91-21); Verizon's Work Rules (ECF No. 91-22); Maryland Department of Labor Notice of Benefit Determination (ECF No. 91-23); Verizon EEO

Policy (ECF No. 91-24); Wage Verification Form (ECF No. 91-25); Overtime Approval Form (ECF No. 91-26); 2016 CWA Verizon CBA (ECF No. 91-27); CWA International Union Constitution (ECF No. 91-28); EEOC Decision and Order in *Goins v. Verizon of Maryland, LLC* (ECF No. 91-29); and pictures of customer reviews (ECF No. 91-30).

Throughout the Complaint, Plaintiff cites to the exhibits to bolster or supposedly corroborate his factual allegations.  Use of exhibits for this purpose is unnecessary and improper at this juncture, because, as relayed above, in considering the Motions to Dismiss, the court takes Plaintiff's factual allegations set forth in the Complaint as true.  *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).  Further, also as explained above, in evaluating a Motion to Dismiss, the court may consider exhibits only if they are "integral to and explicitly relied on in the complaint" and their authenticity is not challenged by the opposing party.  *Am. Chiropractic Ass'n Inc. v. Trigon Healthcare Inc.*, 367 F.3d 212, 234 (4th Cir. 2004); and *see Chesapeake Bay Found. Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (quoting *Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 806 (E.D. Va. 2007)), *supra*.[4]

Here, Plaintiff's EEOC and MCCR charges are expressly referenced in the Complaint, integral to Plaintiff's allegations (inasmuch as his entitlement to pursue this action arises in part from exhaustion of his administrative remedies), and there is no challenge to their authenticity. The court will therefore consider the charges (ECF No. 91-1) in ruling on the Motions to Dismiss. The court, however, declines to consider the remaining exhibits, as they are not integral to the Complaint, do not give rise to legal rights asserted, and Plaintiff repeatedly cites to them for the

---

[4] Integral documents include "the allegedly fraudulent document in a fraud action, the allegedly libelous magazine article in a libel action, and the documents that constitute the core of the parties' contractual relationship in a breach of contract dispute."  *Fisher v. Maryland Dep't of Pub. Safety & Corr. Servs.*, No. JFM-10-CV-0206, 2010 WL 2732334, at *2 (D. Md. July 8, 2010).

mere purpose of supporting his factual allegations. *See Chesapeake Bay Found., Inc.*, 794 F. Supp. 2d. at 611, *supra*.

Plaintiff also filed three Motion Requests for the Court to Take Judicial Notice. (ECF Nos. 101, 104, 123.) Plaintiff improperly uses these filings to provide additional argument in support of his claims. For example, Plaintiff asks this court to take judicial notice that "The Verizon Defendants incorrectly conflate elements of a Hostile Work Environment Claim with a Disparate Treatment (Harassment) claim" (ECF No. 101 at p. 2); that "Mr. Douglas' deliberate failure to report Plaintiff's Race Based Harassment concern was because of Plaintiff [sic] Race and or national Origin and violates Title VII" (ECF No. 104 at p. 2); and that "this Court properly has jurisdiction over Union Defendants" (ECF No. 123 at p. 3). Plaintiff's assertions of law and fact in the Motion Requests are not proper subjects for judicial notice; instead, Plaintiff uses these filings to make responsive arguments in circumvention of the Federal and Local Rules. Plaintiff's Motion Requests do not set forth facts that are "not subject to reasonable dispute because [they] ... can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201. Accordingly, the Motion Requests for the Court to Take Judicial Notice will be denied, and the court will not consider the substance of the filings in ruling on the Motions to Dismiss.

### ii.  Count I – Disparate Treatment Under § 1981, Title VII and MFEPA

In Plaintiff's first cause of action, he alleges Verizon and CWA Local 2100 violated Title VII, 42 U.S.C. § 1981, and MFEPA. Plaintiff frames the violation as "Disparate Treatment (Harassment)." (ECF No. 91 at p. 21.) Construing Plaintiff's pleading liberally, the court will address both a claim for disparate treatment and a claim for "harassment," or hostile work environment. Additionally, under Count I, Plaintiff alleges Mr. Douglas, Mr. Christian, and Mr.

Constantine violated 42 U.S.C. § 1985(3) and Maryland Annotated Code, State Government § 20-801 by conspiring to commit, and aiding and abetting, the alleged discrimination.

Pursuant to Title VII , "[i]t shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1). "Title VII forbids (i) employment practices that discriminate against an employee on the basis of" the aforementioned protected classes, per 42 U.S.C. § 2000e-2. *Strothers v. City of Laurel*, 895 F.3d 317, 326–27 (4th Cir. 2018).

MFEPA is the state law analogue to federal employment discrimination statutes. *Ensor v. Jenkins*, No.CV ELH-20-1266, 2021 WL 1139760, at *18 (D. Md. Mar. 25, 2021). Accordingly, "[c]ourts judge discrimination and retaliation claims brought under MFEPA by the same standards as those same claims brought under Title VII." *Lowman v. Maryland Aviation Admin.*, No.CV JKB-18-1146, 2019 WL 133267, at *4 (D. Md. Jan. 8, 2019) (citing *Hawkins v. Leggett*, 955 F. Supp. 2d 474, 496–97 (D. Md. 2013)). Additionally, "[c]laims of racial discrimination in employment under § 1981 … are evaluated under the Title VII framework." *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017), *as amended* (Aug. 11, 2017).

For a disparate treatment claim, a plaintiff may establish liability under Title VII (and thus under MFEPA and § 1981) by "(1) 'demonstrating through direct or circumstantial evidence that [his] race was a motivating factor in the employer's adverse employment action;' or (2) relying on the burden shifting scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Swaso*, 698 F. App'x at 747 (quoting *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 213–14 (4th Cir. 2007)). Absent direct evidence, under the *McDonnell* framework, a plaintiff must first

establish the elements of a prima facie case of discrimination under Title VII: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment actions; and (4) different treatment from similarly situated employees outside the protected class. *Coleman v. Maryland Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd sub nom*. *Coleman v. Ct. of Appeals of Maryland*, 566 U.S. 30 (2012).

"To survive a motion to dismiss, however, an employment discrimination claim need not establish a prima facie case." *Copes v. Johns Hopkins Univ. Applied Physics Lab'y, LLC*, No. CV RDB-23-2306, 2025 WL 19987, at *4 (D. Md. Jan 2, 2025) (citing *McCleary-Evans v. Md. DOT*, 780 F.3d 582, 584 (4th Cir. 2015)).  Instead, the court's inquiry is whether Plaintiff "alleges facts that plausibly state a violation of Title VII 'above a speculative level.'" *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 617 (4th Cir. 2020) (quoting *Coleman*, 828 F.3d at 190).  Said differently, "the facts alleged must 'support a *reasonable inference* that the decisionmakers were motivated by bias.'" *Copes*, 2025 WL 19987, at *4 (quoting *McCleary-Evans*, 780 F.3d at 586).

As for harassment in violation of Title VII, § 1981, and MFEPA, "[r]acial harassment that creates a 'hostile work environment' is actionable under Title VII because it amounts to discrimination in the conditions of employment." *Purnell v. Maryland*, 330 F. Supp. 2d 551, 560 (D. Md. 2004).  To state a hostile work environment claim, a plaintiff must allege facts sufficient to show that "(1) the plaintiff experienced unwelcome harassment; (2) the harassment was based on the plaintiff's race, color, religion, national origin, or age; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and to create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer." *Chang Lim v. Azar*, 310 F. Supp. 3d 588, 599 (D. Md. 2018).  In determining whether such an environment exists, the court looks to "the frequency of the discriminatory conduct; its severity; whether it is physically

14

threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Boyer-Liberto v. Foutainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015). The "severe or pervasive test" is "a high bar," and "a routine difference of opinion and personality conflict with [one's] supervisor" does not constitute harassment in violation of Title VII. *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 208 (4th Cir. 2019).

In support of his claim, Plaintiff alleges he was "discriminatorily suspended," "two Caucasian employees, Thomas Acra and Aaron Hedetneimi, were not disciplined for similar infractions," and he "perceived his work environment as hostile." (ECF No. 91 ¶¶ 104, 106, 107.) Additionally, Plaintiff asserts "[i]f it were not for Plaintiff being black he would have received fair treatment in his matter," "[i]f Plaintiff were white, he would not have been harassed or terminated," and "[u]pon information and belief, Jeff Douglas and Alfred Christian, did not like Plaintiff because of his Race (due to his color and cultural name) and National Origin (Plaintiff is Nigerian)." (ECF No. 91 ¶¶ 102, 94, 93.)

Plaintiff alleges virtually no facts to support an inference that his termination was motivated by his race. Nearly every allegation referencing Plaintiff's race is a conclusory statement or statement of Plaintiff's beliefs. While Plaintiff alleges that two Caucasian employees were not disciplined for similar infractions, he does not offer any further information about either of the white employees' status or their alleged similar infractions; and it is not even clear to which of Plaintiff's own alleged infractions he refers. *See Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) (noting that "plaintiffs are required to show that they are similar in all relevant respects to their comparator."). Plaintiff does not allege facts suggesting disparate treatment sufficient to transform his conflict with Mr. Christian or any other Verizon supervisor or CWA employee into a plausible discrimination claim.

Plaintiff alleges all of the managers at Verizon during Plaintiff's tenure were "Caucasian" except Alfred Christian was "half-black, half-white." (ECF No. 91 ¶ 43.) That Plaintiff's supervisors were white does not bolster his claim, as "the fact that an employee and supervisor are of different race . . . does not, on its own, establish a plausible claim of discrimination." *Reynolds v. Mayorkas*, No. CV SAG-24-0851, 2025 WL 26666, at *3 (D. Md. Jan. 3, 2025) (citing *Sylvia Development Corp. v. Calvert Cnty., Md.*, 48 F.3d 810, 824 (4th Cir. 1995)).

As far as the court can discern, the only allegations of harassment in the Complaint are Mr. Christian's "being irate" and yelling at Plaintiff. (ECF No. 91 at ¶¶ 48, 49.) These allegations do not describe severe and pervasive harassment. *See Buchhagen v. ICF Int'l, Inc.*, 545 F. App'x 217, 219 (4th Cir. 2013) (finding that allegations of a supervisor mockingly yelling at the plaintiff in a meeting, "yelling and pounding her hands on her desk during another meeting," "repeatedly harping on a mistake" made by the plaintiff, "making snide comments" to the plaintiff, and "unfairly scrutinizing and criticizing" plaintiff's use of leave and lack of compliance with directives fall "far short of being severe or pervasive enough to establish an abusive environment.").

Even if allegations that "Mr. Christian was being irate" or "yelled at Plaintiff telling Plaintiff to go home" were sufficient to state a claim for harassment, Plaintiff has not alleged facts to suggest that this behavior was motivated by race. He does not allege Mr. Christian made any comment about his race or national origin. *See Tawwaab v. Virginia Linen Serv., Inc.*, 729 F. Supp. 2d 757, 775 (D. Md. 2010) (finding harassment was not based on race when Plaintiff failed to adduce "sufficient evidence to show that 'but for' his race he would not have been subject to" alleged harassment.). Accordingly, Plaintiff fails to allege race-based harassment sufficient to state a plausible claim of a hostile work environment.

16

Plaintiff additionally alleges that Defendants Douglas, Christian, and Constantine aided and abetted religious discrimination in violation of Maryland Annotated Code, State Government § 20-801 and conspired to discriminate against Plaintiff in violation of 42 U.S.C. § 1985. Under § 20-801, "[a] person may not: (1) aid, abet, incite, compel, or coerce any person to commit a discriminatory act; (2) attempt, directly or indirectly, alone or in concert with others, to commit a discriminatory act," where "discriminatory act" is, relevant here, an act prohibited under MFEPA. MD. CODE. ANN., STATE GOV'T §§ 20-801, 20-101(d)(4). For the reasons set forth above, Plaintiff does not sufficiently alleged that Verizon committed discrimination prohibited by MFEPA; thus Plaintiff does not state a viable claim that the named Defendants aided or abetted a discriminatory act in violation of § 20-801.

In pertinent part, 42 U.S.C. § 1985(3) provides,

> If two or more persons ... conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws ... the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

It is "well settled" that to sufficiently plead a "'conspiracy to deny equal protection of the laws' under section 1985(3)," a plaintiff must allege: "(1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy." *Simmons v. Foe*, 47 F.3d 1370, 1376 (4th Cir. 1995); *see also Bangura v. Dep't of Pub. Safety & Corr. Servs.*, No. CV JKB-23-2728, 2025 WL 449681, at *8 (D. Md. Feb. 10, 2025) (same). Importantly, "[t]o survive a motion to dismiss, plaintiffs alleging conspiracy under Section 1985(3) must 'plead specific facts in a nonconclusory fashion.'" *Davenport v.*

17

*Maryland*, 38 F. Supp. 3d 679, 692 (D. Md. 2014) (quoting *Gooden v. Howard Cnty., Md.*, 954 F.2d 960, 970 (4th Cir. 1992)).  "It is not enough for a plaintiff to plead 'allegations of parallel conduct' by individuals because the plaintiff 'must show an agreement or a meeting of the minds by defendants to violate the [plaintiff's] constitutional rights.'" *La Union del Pueblo Entero v. Ross*, 353 F. Supp. 3d 381, 397 (D. Md. 2018) (quoting *Simmons*, 47 F.3d at 1376).

Plaintiff alleges "CWA seemingly intentionally conspired . . . in the harassment and the retaliation," "CWA conspired with and aided and abetted Verizon, Jeffrey S. Douglas, Alfred Christian Jr.," and "Jeff Douglas and Alfred Christian . . . conspired with CWA."  (ECF No. 91 ¶¶ 102, 91, 93.)  Plaintiff relies entirely on conclusory allegations that the named Defendants had an agreement or meeting of the minds; no factual allegations in the Complaint allow for a plausible inference that Defendants conspired or engaged in concerted action as Plaintiff concludes.  Finally, and fatally, "deprivation of a right created by Title VII cannot be the basis for a cause of action under § 1985(3)."  in *Great American Federal Savings & Loan Association v. Novotny*, 422 U.S. 366, 378 (1979); *see also Davenport*, 38 F. Supp. 3d at 692 (explaining that where "the essence" of a claim is employment discrimination, *Novotny* forecloses a § 1985(3) claim.).  Plaintiff has thus fails to state a claim in Count I.

### iii.    Count II – Retaliation Under § 1981, Title VII, MFEPA

In Count II, Plaintiff alleges Verizon and CWA Local 2100 violated Title VII, § 1981, and MFEPA by retaliating against him.  In the same Count, Plaintiff alleges Mr. Douglas, Mr. Christian, and Mr. Constantine violated 42 U.S.C. § 1985(3) and Maryland Annotated Code, State Government § 20-801 by conspiring to commit, and aiding and abetting, the alleged discrimination.

Title VII forbids "retaliation against an employee for opposing adverse actions that she reasonably suspects to be unlawful under Title VII" per 42 U.S.C. § 2000e-3. *Strothers v. City of Laurel*, 895 F.3d 317, 326–27 (4th Cir. 2018). As with the discrimination claims in Count I, courts apply the Title VII framework to MFEPA claims and "'a prima facie retaliation claim under 42 U.S.C. § 1981 has the same elements' as a Title VII retaliation claim." *Wade v. Electromet Corp.*, No. CV JKB-21-1133, 2022 WL 2003309, at *4 (D. Md. June 6, 2022 (quoting *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015)). "To establish a *prima facie* case of retaliation, a plaintiff must present facts that, taken as true, establish that (1) the plaintiff engaged in a protected activity; (2) the employer took an adverse action against the plaintiff; and (3) 'there was a causal link between the two events.'" *Chang Lim v. Azar*, 310 F. Supp. 3d 588, 603 (D. Md. 2018) (quoting *Boyer-Liberto*, 786 F.3d at 281).

Plaintiff alleges he engaged in protected activity by "filing a grievance on May 17, 2022 and notifying his Union Representatives and Direct supervisor Jeff Douglas." (ECF No. 91 ¶ 111.) As for an adverse action, Plaintiff alleges that "[l]ess than five months later, on or around October 17, 2022 Jeff Douglas and Management continued their harassment and intensified their scrutiny of Mr. Uzoigwe, conducting a baseless investigation and tracking his location with service observing software . . . [t]his led to an unjust five-day suspension and an indefinite suspension upon return, culminating in Mr. Uzoigwe's termination on November 7, 2022." *Id.* ¶ 112. Accordingly, the causal link between the two events appears to be the temporal link in time; Plaintiff does not allege any other causal link.

"Temporal proximity between an employer's knowledge of an employee's protected activity and an adverse action against that employee must be 'very close' to show a retaliatory motive." *Clarke v. DynCorp Int'l LLC*, 962 F. Supp. 2d 781, 789 (D. Md. 2013). The Fourth

Circuit has explained that a period of two months and two weeks between an employer's knowledge of the employee's protected activity and the adverse action "is sufficiently long so as to weaken significantly the inference of causation between the two events." *King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (4th Cir. 2003).  Where a plaintiff relies on temporal proximity to establish causation, intervening events may erode any causal connection suggested by temporal proximity. *Bullock v. Kraft Foods, Inc.*, No. 3:11CV36-HEH, 2011 WL 5872898, at *9 (E.D. Va. Nov. 22, 2011), *aff'd*, 501 F. App'x 299 (4th Cir. 2012).

Five months elapsed between the protected activity and the alleged retaliation.  Given the length of the intervening period, under Fourth Circuit precedent, the inference of causation is exceedingly weak.  Further, the intervening disputes between Verizon and Plaintiff regarding the use of his assigned work vehicle (ECF No. 91 ¶¶ 47, 112) extinguish the weak causality suggested by the temporal proximity of Plaintiff's grievance report and ultimate termination.  Plaintiff thus fails to state a claim for retaliation in Count II.

### iv.    Counts I and II as to CWA Local 2100

For the reasons stated above, Plaintiff fails to state a claim in Counts I and II.  Even if, however, Plaintiff adequately pled factual allegations to state a claim under Title VII or MFEPA, he failed to exhaust administrative remedies as to CWA Local 2100.

Before filing suit under Title VII, a plaintiff must exhaust administrative remedies.  *Wooten v. Univ. of Maryland, Baltimore*, 733 F. Supp. 3d 402, 423 (D. Md. 2024).  The same is true under MFEPA.  *Bush v. Frederick Cnty. Pub. Schs.*, 2024 WL 639255, at *3 (4th Cir. Feb. 15, 2024) (*per curiam*) ("Both Title VII and the [MFEPA] require a plaintiff alleging employment discrimination to exhaust administrative remedies before filing their lawsuit").  To exhaust administrative remedies, a plaintiff must file a "charge" of discrimination with the EEOC or an

appropriate state or local agency— here, MCCR—within 180 days of the date on which "the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e–5(e)(1); *Bush*, 2024 WL 639255, at *3.

Although the exhaustion requirement is not jurisdictional, "it is a necessary step in pursuing the claim in [c]ourt." *Jackson v. United States*, No. 8:22-cv-00772, 2022 WL 6754671, at *2 (D. Md. Oct. 11, 2022); *see Fort Bend Cnty., Tex. v. Davis*, 587 U.S. 541, 550 (2019) (holding that "Title VII's charge-filing requirement is not of jurisdictional cast").  The filing of an administrative charge serves two important purposes: "'First, it notifies the charged party of the asserted violation. Secondly, it brings the charged party before the EEOC and permits effectuation of the [Civil Rights] Act's primary goal, the securing of voluntary compliance with the law.'"  *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 407 (4th Cir. 2013) (quoting *Dickey v. Greene*, 710 F.2d 1003, 1005 (4th Cir. 1983), *rev'd on other grounds*, 729 F.2d 957 (4th Cir. 1984)).  The exhaustion requirement is not "simply a formality to be rushed through so that an individual can quickly file his subsequent lawsuit." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 510 (4th Cir. 2005).  Rather, it "serves a vital function in the process of remedying an unlawful employment practice." *Balas*, 711 F.3d at 407.

Generally, "a plaintiff fails to exhaust his administrative remedies where . . . his administrative charges reference different time frames, actors, and discriminatory conduct than the central factual allegations in his formal suit." *Chacko*, 429 F.3d at 506.  In determining whether a plaintiff has exhausted his claims, the court should look to claims raised in the administrative complaint, as well as claims "that would naturally have arisen from an investigation thereof." *Parker v. Reema Consulting Servs., Inc.*, 915 F.3d 297, 306 (4th Cir. 2019) (quoting *Dennis v. Cnty. of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995)).

In *Walton v. Harker*, 33 F.4th 165 (4th Cir. 2022), the Fourth Circuit succinctly explained:

> A plaintiff's EEOC charge defines the scope of her subsequent right to institute a civil suit. The allegations contained in the administrative charge of discrimination generally limit the scope of any subsequent judicial complaint. [F]actual allegations made in formal litigation must correspond to those set forth in the administrative charge. Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII [] lawsuit.

*Id.* at 172 (citations omitted). The court also recognizes that administrative charges "often are not completed by lawyers and as such 'must be construed with utmost liberality.'" *Balas*, 711 F.3d at 408 (quoting *Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll.*, 848 F.2d 457, 460 (4th Cir. 1988)). The court, however, is not "at liberty to read into administrative charges allegations they do not contain." *Id.*

Plaintiff's EEOC charge names only Verizon Maryland, LLC (ECF No. 91-1). In the Complaint, Plaintiff acknowledges that CWA Local 2100 is "mention[ed]" in the charges filed with the MCCR and EEOC, but Plaintiff does not dispute that the charge was not filed against CWA Local 2100. (ECF No. 91-1 ¶ 18.) Union Defendants thus argue that Plaintiff has not exhausted administrative remedies with respect to CWA Local 2100.

Courts in this circuit employ the "substantial identity test" to determine "whether a civil action can fairly be brought against a defendant other than the one named in the EEOC charge." *Marshall v. Anne Arundel Cnty., Md.*, No. SAG-18-0074, 2020 WL 1939712, at *5 (D. Md. Apr. 22, 2020). The substantial identity test analyzes four factors:

> 1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint;
> 2) whether, under the circumstances, the interests of a named [party] are so similar as the unnamed party's that for the purpose of

> obtaining voluntary conciliation and compliance it would be
> unnecessary to include the unnamed party in the EEOC proceedings;
> 3) whether its absence from the EEOC proceedings resulted in actual
> prejudice to the interests of the unnamed party; [and]
> 4) whether the unnamed party had in some way represented to the
> complainant that its relationship with the complainant is to be
> through the named party.

*Vanguard Justice Soc'y Inc. v. Hughes*, 471 F. Supp. 670, 688 (D. Md. 1979) (quoting *Glus v. G.C.*

*Murphy Co.*, 562 F.2d 880, 888 (3d Cir. 1977)).

Addressing these four factors, the grounds for alleged discrimination claims against

Verizon and CWA Local 2100 are distinct; CWA Local 2100 could not determine the nature of

the allegations against it from Plaintiff's allegations contained in the charge. The grievance

process, from which Plaintiff's allegations against the Union Defendants stem, had not even

concluded when Plaintiff initiated the charge. (ECF No. 91 ¶¶ 79, 81.) There are no allegations

in the Complaint that allow the court to reasonably understand or conclude that CWA Local 2100

and Verizon are "so similar" that it would not have been necessary to name CWA Local 2100 in

the Complaint. There are also no allegations that CWA represented to Plaintiff that its relationship

with the complainant was to be through Verizon. Although Union Defendants do not argue they

were prejudiced by absence from EEOC proceedings, the court concludes that Plaintiff fails to

allege facts competent to satisfy the substantial identity exception to the EEOC naming

requirement. Accordingly, Plaintiff may not bring Title VII or MFEPA claims against CWA Local

2100.

> **v.    Count III – FMLA Interference and Retaliation under 28 U.S.C. § 2601, *et***
> ***seq*. against Verizon and Alfred Christian**

In Count III, Plaintiff alleges Defendants Verizon and Mr. Christian subjected Plaintiff to

interference and retaliation for engaging in protected activity under the FMLA. (ECF No. 91 ¶

119.)

Pursuant to the FMLA, "an eligible employee is entitled to a total of twelve workweeks of leave during any twelve-month period and, upon return to work, restoration to the position held when the leave commenced or to an equivalent position." *Rodriguez v. Smithfield Packing Co.*, 545 F. Supp. 2d 508, 515 (D. Md. 2008) (citing 29 U.S.C. § 2614(a)(1)(A)–(B)).

> To establish unlawful interference with an entitlement to FMLA benefits, an employee must prove that: (1) she was an eligible employee; (2) her employer was covered by the statute; (3) she was entitled to leave under the FMLA; (4) she gave her employer adequate notice of her intention to take leave; and (5) the employer denied her FMLA benefits to which she was entitled.

*Id*. at 516 (citations omitted).

Plaintiff does not allege Verizon restrained or denied his exercise of FMLA rights; quite the opposite, Plaintiff states Mr. Christian "forced" him to use FMLA leave. (ECF No. 91 ¶¶ 46, 118.) Accordingly, Plaintiff fails to allege a claim for FMLA interference.

The FMLA also "contains proscriptive provisions that protect employees from discrimination or retaliation for exercising their substantive rights under the FMLA." *Yashenko v. Harrah's NC Casino Co.*, 446 F.3d 541, 546 (4th Cir. 2006). The retaliation provision states that "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this title." 29 U.S.C. § 2615(a)(2). "A retaliation claim under the FMLA differs from an interference claim under the FMLA in that 'the interference claim merely requires proof that the employer denied the employee his entitlements under the FMLA, while the retaliation claim requires proof of retaliatory intent.'" *Bosse v. Baltimore Cnty.*, 692 F. Supp. 2d 574, 588 (D. Md. 2010) (quoting *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1051 (8th Cir. 2006)). Under a retaliation theory, "[t]he employer's motive is relevant because retaliation claims impose liability on employers that act against employees

specifically because those employees invoked their FMLA rights." *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 508 (6th Cir. 2006).

FMLA retaliation claims are analogous to discrimination claims brought under Title VII, and courts assess FMLA retaliation claims under Title VII standards. *Laing v. Fed. Express Corp.*, 703 F.3d 713, 717 (4th Cir. 2013). At the motion to dismiss stage, an employee is not required to establish a prima facie case, but must allege facts that permit the court to plausibly infer that the employer discharged or discriminated against him because he exercised FMLA rights. *See Copes*, 2025 WL 19987, at *4, *supra; Snipes v. Sw. Virginia Reg'l Jail Auth.*, 350 F. Supp. 3d 489, 494 (W.D. Va. 2018).

In the Complaint, Plaintiff alleges he was suspended in retaliation for "being on the FMLA approved leave." (ECF No. 91 ¶ 50.) Specifically, Plaintiff alleges that on May 17, 2022, Mr. Christian summoned Plaintiff to his office and "yelled at Plaintiff telling Plaintiff to go home." *Id.* ¶ 49. While this incident occurred only eight days after Plaintiff returned from FMLA leave, in the intervening eight days, Plaintiff told Mr. Christian that a drill was missing from his truck (*Id.* ¶ 45) and sent Mr. Christian pictures of his partially cleaned assigned work vehicle (*Id.* ¶ 47). Later in the Complaint, Plaintiff details the order of events as follows:

> 190. Local Manager Alfred Christian harassed Plaintiff starting May 9, 2022, following his FMLA leave. This hostility culminated in a discriminatory suspension on May 17, 2022, for issues with a non-compliant vehicle, despite Management's awareness that the vehicle did not meet Vehicle Standardization Policy (VSP) requirements. The Union decided against pursuing Plaintiff's grievance regarding this unjust suspension.
>
> 191.On May 20, 2022, Plaintiff reported the harassment to Jeff Douglas and provided evidence to Douglas, Mike Constantine, and Jason Chesney. Despite identifying two Caucasian employees with similar or worse vehicle conditions who were not disciplined, Plaintiff faced intensified scrutiny and a frivolous investigation that

began on October 13, 2022.

*Id.* ¶¶ 190, 191.

Despite the temporal proximity of Plaintiff's FMLA leave and the alleged May 17 interaction with Mr. Christian, Plaintiff's allegations, taken as true, do not plausibly suggest that Mr. Christian suspended him because of his FMLA leave. As described above, Plaintiff alleges that Mr. Christian encouraged, even "forced," Plaintiff to use his FMLA leave. (ECF No. 91 ¶¶ 46, 118.) Though not impossible, it is implausible that Mr. Christian discriminated against Plaintiff for his exercise of his FMLA rights after Mr. Christian insisted Plaintiff exercise those rights. Additionally, the temporal proximity of the leave and alleged discrimination is materially undercut by intervening events. *See Bullock*, 2011 WL 5872898, at *9, *supra*. By Plaintiff's own description, the intervening issue with the non-compliant vehicle, not the FMLA leave, led to his suspension. (ECF No. 91 ¶ 190.) Plaintiff accordingly fails to plead facts sufficient to permit the court to plausibly infer that Verizon discriminated against him for exercising his FMLA rights.

> **vi.    Count IV – Unlawful Interception of Electronic Communications under 28 U.S.C. § 2510, *et seq*. and Maryland Code, Courts and Judicial Procedures § 10-401, *et seq*. against Verizon**

In Count IV, Plaintiff alleges Verizon violated 18 U.S.C. § 2510 by "us[ing] GPS tracking to monitor Mr. Uzoigwe with the intent to harm him economically and mentally, leading to his termination." (ECF No. 91 ¶ 125.) Section 2510 prohibits interception of "any wire, oral, or electronic communication" where electronic communication does not include "any communication from a tracking device." 18 U.S.C. § 2510(12)(c).

In the same Count, Plaintiff additionally alleges Verizon violated Maryland Annoted Code, Courts and Judicial Procedures § 10-401, *et seq*. This Maryland statute prohibits interception of "any wire, oral, or electronic communication" and specifies that "electronic communication" does

not include "any communication from a tracking device." MD. CODE ANN., CTS. & JUD. PROC. §§ 10-402, 10-401(5)(ii).

Plaintiff does not allege any facts relating to wire communications falling within the statutory definitions; all of the allegations related to this count concern a tracking device. Plaintiff thus has not pled facts sufficient to support a claim under either the federal or state statute.

### vii. Count V – Unlawful Disclosure of Electronic Communications under 18 U.S.C. § 2701, *et seq.,* and Maryland Annotated Code, Courts and Judicial Procedures § 10-4A-01, *et seq*., against Verizon

In Count V, Plaintiff alleges Verizon violated 18 U.S.C. § 2701 and Maryland Annotated Code, Courts and Judicial Procedures § 10-4A-01 by unlawfully sharing tracking data. (ECF No. 91 ¶ 132.) Section 2701 incorporates the same definitions at Section 2510, described above. 18 U.S.C. § 2711(1). The relevant Maryland statute also concerns "wire or electronic communication" and adopts the definitions for both terms set forth in § 10-401 which exclude communication from a tracking device. MD. CODE ANN., CTS. & JUD. PROC. §§ 10-41-01, 10-401(5)(ii).

Accordingly, under the federal and state statutes, Plaintiff fails to plead facts sufficient to state a claim for unlawful disclosure of electronic communications.

### viii. Count VI – Trespass to Chattel against Verizon

Under Maryland law, "trespass to a chattel may be committed by intentionally (a) dispossessing another of the chattel, or (b) using or intermeddling with a chattel in the possession of another." RESTATEMENT (SECOND) OF TORTS § 217 (1965); *see also Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 697 (D. Md. 2011) (explaining that Maryland "rel[ies] heavily on the Restatement (Second) of Torts" in defining a trespass to chattel claim). "To state a claim for trespass to chattels or conversion, a plaintiff must be entitled to rightful possession."

*Griaznov v. J-K Techs., LLC*, No. ELH-16-2522, 2017 WL 915000 at *13 (D. Md. Mar. 8, 2017)

(citations omitted); *see also* RESTATEMENT (SECOND) OF TORTS § 217.  "Under Maryland law,

trespass to chattels occurs when a person intentionally uses or intermeddles with a chattel in

possession of another resulting in the chattel being 'impaired as to its condition, quality, or value.'"

*InfoTek Corp. v. Preston*, 626 F. Supp. 3d 885, 894 (D. Md. 2022) (quoting *Ground Zero Museum*

*Workshop*, 813 F. Supp. 2d at 697).

Plaintiff alleges that "Management deprive Mr. Uzoigwe of his rights when they tracked

him by GPS . . . with the intent to and actually causing harm to Mr. Uzoigwe."  (ECF No. 91 ¶

138.)[5]  Plaintiff does not allege, however, that installation of GPS on the van impaired the van's

condition, quality, or value.  Plaintiff further alleges: "Management deprive Mr. Uzoigwe of the

use of that or any vehicle between October 17, 2022 to this present day due to the GPS findings."

*Id*. ¶ 139.  The Restatement makes clear, however, that "[o]ne who is entitled to the immediate

possession of a chattel is not liable to another for dispossessing him of it."  RESTATEMENT

(SECOND) OF TORTS § 272 (1965).  Plaintiff acknowledges that the van belonged to Verizon and,

as Verizon's employee, he was merely assigned to use it.  (ECF No. 91 ¶ 137.)  Plaintiff thus fails

to allege facts sufficient to state a claim for Trespass to Chattel.

### ix.     Count VII – Intrusion Upon Seclusion against Verizon

Plaintiff next alleges that Verizon committed intrusion upon seclusion by tracking him

using the GPS system in his assigned Verizon vehicle.  (ECF No. 91 ¶ 143.)  Verizon argues

Plaintiff is not entitled to a reasonable expectation of privacy in his work vehicle and, further, the

location of the Verizon vehicle on public roads was readily observable and thus there was no

intrusion into a private place or upon Plaintiff's private affairs.  (ECF No. 99-1 at p. 20.)  In his

---

[5] Plaintiff does not include any details about the alleged tracking of his work-assigned vehicle in the facts section of his Complaint.  Accordingly, the court cannot determine where in the sequence of events the alleged tracking occurred.

response to Verizon's Motion to Dismiss, Plaintiff suggests that in *Jones v. United States*, 565 U.S. 400 (2012), the Supreme Court established that individuals enjoy an expectation of privacy in their physical movements, and that, by tracking him, Verizon intruded upon his expectation of privacy.

"An intrusion upon seclusion occurs where there is an 'intentional intrusion upon the solitude or seclusion of another or his private affairs or concerns that would be highly offensive to a reasonable person.'" *Demo v. Kirksey*, No. 8:18-CV-00716-PX, 2018 WL 5994995, at *3 (D. Md. Nov. 15, 2018) (quoting *Furman v. Sheppard*, 130 Md. App. 67, 73 (2000)); *see also* RESTATEMENT (SECOND) OF TORTS § 652B (Am. Law. Inst. 1977)). A prerequisite to an intrusion upon seclusion claim is "that the matter into which there was an intrusion is entitled to be private and is kept private by the plaintiff." *Whye v. Concentra Health Servs., Inc.*, No. CIV.A. ELH-12-3432, 2013 WL 5375167, at *15 (D. Md. Sept. 24, 2013), *aff'd*, 583 F. App'x 159 (4th Cir. 2014) (internal quotations omitted). Generally, if reasonable surveillance captures only what can be seen by the general public, no intrusion upon seclusion has occurred. *Demo*, 2018 WL 5994995, at *3.

The Supreme Court's analysis in *Jones* does not salvage Plaintiff's claim. There, the Court determined that installation of a GPS device on a criminal defendant's car to track his movements for four weeks constituted a Fourth Amendment search. *Jones*, 565 U.S. at 404. While the Court held that installation of GPS was the constitutionally violative act, in concurrence, Justices acknowledged the tracking constituted another form of search because "individuals have a reasonable expectation of privacy in the whole of their physical movements." *Carpenter v. United States*, 585 U.S. 296, 310 (2018) (citing *Jones*, 565 U.S. at 430 (Alito, J., concurring in judgment) and *id.* at 415 (Sotomayor, J. concurring)). Further, the Court distinguished the facts in *Jones* from a "relatively short-term monitoring of a person's movements on public streets" which "accords

with expectations of privacy that our society has recognized as reasonable." *Jones*, 565 U.S. at 430 (citing *United States v. Knotts*, 460 U.S. 276, 281–282 (1983)). This court, analyzing *Jones*, has explained "[t]aken together, a fair reading of the concurring opinions in *Jones* expands the zone of an individual's reasonable expectation of privacy to include continuous and systematic tracking of that individual's every movement through GPS technology." *Demo*, 2019 WL 5994995, at *5. That is not what has occurred in this case. Here, Plaintiff alleges his employer tracked his movements when he was in his employer-assigned van. An employer's tracking of its own property on public roads during work hours does not intrude on a matter into which Plaintiff was entitled to keep private. Therefore, Plaintiff does not allege facts sufficient to support an intrusion upon seclusion claim.

> **x.    Count VIII – Libel/ Slander against Verizon, Alfred Christian, Jeffrey Douglas, CWA, and Mike Constantine**

In Count VIII, Plaintiff alleges "Jeff Douglas and Alfred Christian maliciously and purposefully spread numerous false statements regarding Plaintiff's actions on October 13th, 2022 and October 15th, 2022 . . . . These false statements were shared with Verizon and to CWA." (ECF No. 91 ¶ 149.)

In a case involving a plaintiff who is not a public figure, to state a prima facie case of defamation, a plaintiff must plead facts sufficient to establish:

> (1) the defendant made a defamatory communication—i.e., that he communicated a statement tending to expose the plaintiff to public scorn, hatred, contempt, or ridicule to a third person who reasonably recognized the statement as being defamatory; (2) the statement was false; (3) the defendant was at fault in communicating the statement; and (4) the plaintiff suffered harm.

*Peroutka v. Streng*, 116 Md. App. 301, 311 (1997).

Plaintiff does not allege the content of the allegedly defamatory "false statements;" nor does he allege facts that suggest or indicate the statements exposed him to public scorn, hatred, contempt or ridicule.  (ECF No. 91 ¶¶ 150, 151, 152.)  Additionally, Plaintiff's allegations fail to support a claim for defamation as the allegedly defamatory statements are privileged.  "A plaintiff cannot prove the third element of a defamation claim if the allegedly defamatory statements are privileged."  *Gomer v. Home Depot U.S.A., Inc.*, No. CV GLR-16-356, 2016 WL 5791226, at *6 (D. Md. Oct. 4, 2016) (citing *Szot v. Allstate Ins. Co.*, 161 F. Supp. 2d 596, 607–09 (D. Md. 2001)).  Statements "made for a reasonable employment-related purpose, such as communicating the circumstances and alleged misconduct that served as the basis for terminating an employee" enjoy a qualified privilege.  *Id.*  A plaintiff may overcome this qualified privilege if he shows

> (1) the publication is made with malice, that is, with knowledge of falsity or reckless disregard for truth; (2) the statement was not made in furtherance of the interest for which the privilege exists; (3) the statement is made to a third person other than one 'whose hearing is reasonably believed to be necessary or useful to the protection of the interest [,]' and (4) the statement includes defamatory matter not reasonably believed to be in line with the purpose for which the privilege was granted.

*Szot*, 161 F. Supp. 2d at 608 (quoting *Mareck v. Johns Hopkins Univ.*, 482 A.2d 17, 21 (Md. Ct. Spec. App. 1984)).

Inasmuch as the alleged defamatory statements here concerned the reasons for Plaintiff's termination from Verizon, Defendants enjoy a qualified immunity.  Plaintiff alleges no facts to challenge, no less defeat, Defendants' qualified immunity; thus he fails to state a claim for defamation.

>    **xi.    Count IX – Intentional Infliction of Emotional Distress against Verizon,**
>    **Alfred Christian, Jeffrey Douglas, CWA, and Mike Constantine**

In Count IX, Plaintiff asserts Verizon, Mr. Douglas, and Mr. Christian intentionally inflicted emotional distress by harassing him based on his race and abruptly terminating his employment.  (ECF No. 91 ¶¶ 155–160, 169.)  He also asserts CWA and Mr. Constantine did the same by colluding with Verizon and Verizon employees to make sure Plaintiff was not reinstated, and by preventing him from raising his harassment claims during the grievance process.  *Id.* ¶¶ 161–164.  Verizon and Union Defendants assert that Plaintiff's allegations are insufficient to plausibly state a claim for intentional infliction of emotional distress ("IIED").

To state a claim for IIED, "a plaintiff must allege facts showing that: (1) the conduct in question was intentional or reckless; (2) the conduct was extreme and outrageous; (3) there was a causal connection between the conduct and the emotional distress; and (4) the emotional distress was severe."  *Rubino v. New Acton Mobile Indus., LLC*, 44 F. Supp. 3d 616, 624 (D. Md. 2014) (citing *Harris v. Jones*, 281 Md. 560, 566 (1977)).  "When attempting to make such a showing, plaintiffs need to plead with specificity, as reciting 'in conclusory form the bare elements of an intentional infliction of emotional distress claim' will not do."  *Lilly v. Baltimore Police Dep't*, 694 F. Supp. 3d 569, 596 (D. Md. 2023) (quoting *Vance v. CHF Int'l*, 914 F. Supp. 2d 669, 683 (D. Md. 2012)).  "To be actionable, the conduct relied upon 'must strike to the very core of one's being, threatening to shatter the frame upon which one's emotional fabric is hung.'"  *Farasat v. Paulikas*, 32 F. Supp. 2d 244, 248 (D. Md. 1997) (quoting *Hamilton v. Ford Motor Credit Co.*, 66 Md. App. 46, 59–60 (1986)).  "Generally speaking, claims for IIED are disfavored, difficult to establish and, as such, rarely viable."  *Lewis-Davis v. Baltimore Cnty. Pub. Sch. Infants & Toddlers Program*, No. CV ELH-20-0423, 2021 WL 1720235, at *14 (D. Md. Apr. 30, 2021) (internal quotation omitted).

"To survive a motion to dismiss, the facts alleged must give rise to the inference that, because of the defendant's egregious conduct, the plaintiff experienced 'severely disabling emotional trauma,'. . . *i.e.*, that she was rendered 'unable to function' or 'unable to attend to necessary matters.'" *Lewis-Davis*, 2021 WL 1720235, at *14 (quoting *Chin v. Wilhelm*, CCB-02-01551, 2006 WL 827343, at *9 (D. Md. Mar. 24, 2006)); *Pemberton v. Bethlehem Steel Corp.*, 66 Md. App. 133, 161 (1986)).  A plaintiff must therefore "plead specific facts regarding the nature, intensity, and duration of the alleged emotional trauma." *Id.* (quoting *Chin*, 2006 WL 827343, at *9).

Here, Plaintiff's allegations of emotional distress are scant and conclusory: "[t]he abrupt stoppage of Plaintiff's employment had severe emotional effects on Mr. Uzoigwe."  (ECF No. 91 ¶ 169.)  As discussed above, Mr. Christian's alleged behavior is insufficient to support a claim for harassment, much less a claim for intentional infliction of emotional distress.  Plaintiff's allegations do not suggest Mr. Christian acted in an extreme and outrageous manner.  As for CWA and Mr. Constantine, Plaintiff alleges "collu[sion] with Jeff Douglas in making sure that Mr. Uzoigwe did not get a chance to be reinstated" and "stat[ing] to Plaintiff . . . that his termination had nothing to do with the harassment file."  *Id.* ¶ 161.  Plaintiff's allegations fall far short of stating a plausible claim for IIED.

### xii.    Count X – Negligent Retention against Verizon

Plaintiff alleges Verizon and Mr. Douglas negligently retained Mr. Christian by failing to terminate his employment despite awareness of past instances of discrimination and narcotics abuse.  (ECF No. 91 ¶¶ 174–177.)

"In Maryland, a plaintiff may not maintain a negligent supervision and retention claim when the underlying conduct is not actionable under Maryland common law." *Whittaker v. David's*

*Beautiful People, Inc.*, No. CV DKC 14-2483, 2016 WL 429963, at *8 (D. Md. Feb. 4, 2016) "Maryland courts repeatedly have held that 'Title VII may not form the predicate for claims of negligent retention and supervision" because there is no Maryland common law cause of action for employment discrimination.'" *Id.* (citing *Ruffin Hotel Corp. of Md. v. Gasper*, 418 Md. 594, 615–18 (2011)).  Further, there is no Maryland common law cause of action for narcotics abuse. Plaintiff's negligent retention claims will be dismissed.

> **xiii.    Count XI and XII – Breach of Duty of Fair Representation against CWA and Breach of Contract (under LMRA 301) against Verizon**

In Count XI, Plaintiff alleges CWA breached its duty of fair representation; in Count XII, Plaintiff alleges Verizon breached the Collective Bargaining Agreement ("CBA") in violation of LMRA Section 301.  Section 301 allows litigants to bring "[s]uits for violation of contracts between an employer and a labor organization" in federal district court.  29 U.S.C. § 185.  In a "so-called hybrid § 301 action," where a plaintiff sues both his employer and his union, the plaintiff must allege "both 1) that the union breached its duty of fair representation and 2) that his employer violated the collective bargaining agreement."  *Groves v. Commc'n Workers of Am.*, 815 F.3d 177, 178–79 (4th Cir. 2016) (quoting *Thompson v. Aluminum Co. of Am.*, 276 F.3d 651, 656 (4th Cir. 2002)) (internal quotation marks omitted); *see also Bailey v. Washington Metro. Area Transit Auth.*, No. GJH-19-2540, 2020 WL 3259081, at *3 (D. Md. June 16, 2020) (same).

In Section 301 actions, the claims against the employer and the union are "interlocked," so that "neither claim is viable if the other fails," but "federal courts review allegations against employers for breach of collective bargaining agreements only when an employee has first proved that the union representing him breached its duty of fair representation."  *Thompson*, 276 F.3d at 657 (citing *Vaca v. Sipes*, 386 U.S. 171, 186 (1967)).

As a labor union, CWA has "a duty to represent the interests of all of its employees 'fairly, impartially, and in good faith.'" *Jeffreys v. Commc'ns Workers of Am., AFL-CIO*, 354 F.3d 270, 274 (4th Cir. 2003) (quoting *Steele v. Louisville & Nashville R.R. Co.*, 323 U.S. 192, 204 (1944)). Breach of this duty occurs when a union's conduct towards one of its members is "arbitrary, discriminatory, or in bad faith." *Id.* (quoting *Vaca v. Sipes*, 386 U.S. 171, 190 (1967)).

A union's conduct is "arbitrary" if it is "so far outside a wide range of reasonableness" as to be "wholly irrational." *Id.* (quoting *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 78 (1991)). Arbitrariness is an objective quality; in contrast, whether a union acts in bad faith or discriminatorily "depends on the subjective motivation of the union's officials." *Id.* at 275. "The duty of fair representation prohibits only 'invidious' discrimination, such as discrimination based on constitutionally protected categories like race or gender, or discrimination that arises from animus or prejudice." *Id.* at 276 (quoting O'Neill, 499 U.S. at 81). "Bad faith may be established if a plaintiff can show that union officials engaged in 'fraud, or deceitful or dishonest action.'" *Bailey*, 2020 WL 3259081, at *3 (quoting *Jeffreys*, 354 F.3d at 276). "[M]ere negligence, poor judgment or inefficiency on the part of the union will not satisfy a claim for breach of the duty of fair representation." *Thomson v. Verizon MD., Inc.*, 140 F. Supp. 2d 546, 551 (D. Md. 2001) (citing *Smith v. Loc. 7898, United Steelworkers of Am.*, 834 F.2d 93, 95 (4th Cir. 1987)). In addition, a plaintiff must demonstrate a "substantial reason to believe that a union breach of duty contributed to an erroneous outcome in the contractual proceedings." *Ash v. United Parcel Serv.*, 800 F.2d 409, 411 (4th Cir. 1986).

Here, Plaintiff claims that CWA violated its duty of fair representation by declining to pursue arbitration of his grievance against Verizon. (ECF No. 91 ¶ 187.) Additionally, Plaintiff alleges CWA representatives knew of Plaintiff's harassment allegations and discouraged him from

raising them during the grievance procedure. *Id*. ¶¶ 180–181. The Complaint lacks any allegation that CWA or its representatives engaged in fraud, deceit or dishonest action, or invidious discrimination. Plaintiff does allege, however, that "CWA incorrectly stated Plaintiff did not qualify for arbitration," and this "inaction and delay potentially barred Plaintiff from legal recourse." *Id*. ¶ 183.

Plaintiff's allegations are insufficient to state a claim against CWA for breach of duty of fair representation. "The grievance processes cannot be expected to be error-free." *Hines v. Anchor Motor Freight*, 424 U.S. 554, 571 (1976). Importantly, an employee does not "ha[ve] an absolute right to have his grievance taken to arbitration." *Vaca*, 386 U.S. at 191. "As long as a union does not arbitrarily ignore a meritorious grievance or handle it in a perfunctory manner, that union has not violated its duty of fair representation." *Thompson*, 276 F.3d at 658. The Complaint details numerous consultations between Plaintiff and CWA representatives regarding grievance procedures (ECF No. 91 ¶¶ 51, 60, 68, 69, 75, 82, 83, 87, 88); CWA represented Plaintiff at numerous meetings with Verizon employees (*Id*. ¶¶ 49, 65) and then pursued two steps of grievance for his claim (*Id*. ¶¶ 71, 85). Plaintiff does not allege that CWA representatives discriminated against him; nor do his allegations, taken as true, suggest or demonstrate that the Union's decision not to pursue arbitration was "wholly irrational." *See Jeffreys*, 354 F.3d at 274. The Complaint fails to state a § 301 claim under the LMRA because Plaintiff does not sufficiently allege the Union breached its duty of fair representation. Accordingly, Counts XI and XII shall be dismissed.

Even had Plaintiff adequately pled breach of the duty of fair representation, his LMRA claim would still fail because, on the face of the Complaint, Plaintiff's breach of collective bargaining agreement claim against Verizon is untimely. "[A] six-month statute of limitations

applies to actions under the [LMRA] brought by an employee against his employer for breach of a collective bargaining agreement." *Foy v. Giant Food, Inc.*, 298 F.3d 284, 291 (4th Cir. 2002) (citing *DelCostello v. Int'l Bhd. Of Teamsters*, 462 U.S. 151, 171–72 (1983)); *see also Bowers v. Int'l Bhd. of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers, & Helpers AFL-CIO*, No. 22-1130, 2022 WL 16859738, at *3 (4th Cir. Nov. 10, 2022) (noting LMRA's six-month statute of limitations). "This limitations period begins to run when the claimant discovers, or through the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation." *Bruce v. Int'l Longshoremen's Ass'n*, 7 F. Supp. 2d 609, 614 (D. Md. 1998), *aff'd sub nom. Bruce v. Int'l Longshoremen's Ass'n, AFL-CIO*, 182 F.3d 907 (4th Cir. 1999) (citing *McCreedy v. Loc. Union No. 971, UAW*, 809 F.2d 1232, 1236 (6th Cir. 1987)). A plaintiff discovers the act constituting the violation on the date they were allegedly terminated in violation of the CBA. *Marable v. D.P.I. Specialty Foods Mid Atl., Inc.*, No. CV DKC 19-2809, 2020 WL 4569522, at *3 (D. Md. Aug. 7, 2020).

Verizon terminated Plaintiff's employment on November 7, 2022. (ECF No. 91 ¶ 67.) Plaintiff had six months from that date, until May 7, 2023, to pursue a claim under the LMRA for termination in violation of the CBA. Plaintiff did not file the instant lawsuit until November 19, 2023. *Id*. ¶ 24. Plaintiff maintains that "tolling was in effect from November 7, 2022, and expired on either July 8 or September 8, 2023." *Id*. ¶ 29. The Complaint, however, presents no facts to support equitable tolling or any basis as to why such tolling should extend until CWA indicated to Plaintiff that it would not take his grievance to arbitration. *See Id*. ¶ 19 (identifying September 8, 2023, as the date Plaintiff received a Notice of Termination of Grievance); *Marable*, 2020 WL 4569522, at *3 (explaining "[e]quitable tolling applies where the defendant has wrongfully deceived or misled the plaintiff in order to conceal the existence of a cause of action." (quoting

37

*Mezu v. Dolan*, 75 F. App'x 910, 912 (4th Cir. 2003) (internal quotations omitted))).  Plaintiff's LMRA claims against CWA and Verizon will accordingly be dismissed.

### B.  Motions for Leave to File Sur-Reply

Plaintiff has filed two Motions for Leave to File Sur-Reply (ECF Nos. 111, 121).  In both, Plaintiff alleges that Defendants raise new arguments in their replies but fails to identify the alleged new arguments.  In his proposed surreplies, Plaintiff exceeds the 15-page limit on replies, and, in any event, merely reasserts his previously-made arguments in opposition to the Motions to Dismiss.  *See* Local Rule 105.3 (D. Md. 2023) ("reply memoranda shall not exceed fifteen (15) pages").

Although surreplies are generally not permitted, the decision to permit a party to file a surreply is within the court's discretion. *EEOC v. Freeman*, 961 F. Supp. 2d 783, 801 (D. Md. 2013), *aff'd in part sub nom.*, 778 F.3d 463 (4th Cir. 2015).  *See* Local Rule 105.2(a) (D. Md. 2023) ("Unless otherwise ordered by the Court, surreply memoranda are not permitted to be filed."). "This discretion is typically used in the interest of fairness to permit parties to respond to new matters raised for the first time in the opposing parties' reply briefs." *Boland v. Amazon.com Sales*, *Inc.*, 628 F. Supp. 3d 595, 599 (D. Md. 2022) (citing *Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003), *aff'd*, 85 F. App'x 960 (4th Cir. 2004)).  *See Freeman*, 961 F. Supp. 2d at 801 ("Surreplies may be permitted when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply.") (citing *Khoury*, 268 F.Supp.2d at 605 (D. Md. 2003)).

This court may "use[] this discretion to permit self-represented parties to file surreplies even where no new matters were raised in the reply brief." *Trainor v. McGettigan*, No. CV GLR-22-1505, 2023 WL 403621, at *2 (D. Md. Jan. 25, 2023).  *See Carroll v. Porter*, No. CV GLR-23-

02960, 2024 WL 3275482, at *4 (D. Md. July 2, 2024) (same); *Boland*, 628 F. Supp. 3d at 599

(same); *Wommack v. Ceres Terminals, Inc.*, No. CV JKB-19-1720, 2019 WL 4393136, at *2 (D.

Md. Sept. 13, 2019) (same).  Importantly, this court has permitted surreplies where a *pro se*

plaintiff's surreply did not "unduly prejudice" defendants.  *Williams v. Bartee*, No. CIV.A. CCB-

10-935, 2011 WL 2842367, at *2 (D. Md. July 14, 2011), *aff'd sub nom. Williams v. Merritt*, 469

F. App'x 270 (4th Cir. 2012).

Here, accepting Plaintiff's proposed surreplies would prejudice Defendants who have

already been made to respond to pleadings that far exceed the limitations imposed by the Federal

and Local Rules.  Additionally, Plaintiff fails to identify any new argument presented by

Defendants in their replies; Plaintiff has had ample opportunity to address the Motions to Dismiss

through his response briefs.  The court will exercise its discretion to deny Plaintiff's motions for

leave to file surreplies and will not consider the proposed surreplies in considering the Motions to

Dismiss.

### C.  Motion Requesting Clarification and Motion for Leave to Amend

As discussed in this court's memorandum opinion and order at ECF No. 131, on May 15,

2024, Defendants filed notice of Defendant Jeffrey Douglas' death.  (ECF No. 131 at p. 1.)

Following the notice of death, Plaintiff moved to substitute deceased Defendant Jeffrey Douglas

with his personal representative, Leslie Douglas.  *Id*. at p. 3.  By order of February 3, 2025,

pursuant to Federal Rule of Civil Procedure 25(a), the court granted the Motion to Substitute and

instructed Madam Clerk to substitute deceased Defendant Jeffrey Douglas with his personal

representative, Leslie Douglas.  *Id*.

Following the court's order, on March 12, Plaintiff filed a "Letter Motion to the Court

Requesting Clarification and showing Proof of Service to Defendant Leslie L. Douglas and Kelley

E. Singer of ECF 131." (ECF No. 132.) In correspondence at ECF No. 132, Plaintiff "request[ed] clarification as to whether Ms. Douglas needs to be summoned, or if the prior attorneys of Jeffrey S. Douglas are indeed representing Ms. Douglas." (ECF No. 132 at p. 1.)

The court is not aware of Ms. Douglas' representation. As the court noted in the order at ECF No. 131, Rule 25 requires that the motion to substitute and statement noting death be served on the substituted personal representative, and Plaintiff has effectuated service of same. (ECF No. 131 at pp. 1–2.)

While the Motion for Clarification was still pending, Plaintiff filed a Motion for Leave of Court to File Second Consolidated Amended Complaint. (ECF No. 133.) In his proposed second amended complaint, "Plaintiff has only edited his First Consolidated Amended Complaint to reflect the substitution of Jeffrey S. Douglas for Leslie L. Douglas, as Personal Representative of the Estate of Jeffrey S. Douglas." *Id.* Verizon Defendants oppose the motion and correctly observe that the court has already ordered the substitution by its order at ECF No. 131. Accordingly, the Verizon Defendants insist the proposed amendment is futile.

Leave to amend "should only be denied on the ground of futility when the proposed amendment is clearly insufficient or frivolous on its face." *Johnson v. Oroweat Foods Co.,* 785 F.2d 503, 510 (4th Cir. 1986). A court is also permitted to deny as futile a request for leave to amend where the "proposed amended complaint fails to satisfy the requirements of the federal rules." *Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011) (quoting *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008)); *see In re Triangle Cap. Corp. Sec. Litig.*, 988 F.3d 743, 750 (4th Cir. 2021) ("[I]n recent years, we have made clear that district courts are free to deny leave to amend as futile if the complaint fails to withstand Rule 12(b)(6) scrutiny.").

Here, not only is the proposed amendment unnecessary as the court has already ordered the proposed substitution, but substituting Leslie Douglas, as personal representative for the estate of Jeffrey Douglas, for Jeffrey Douglas does not remedy the fatal deficiencies in Plaintiff's pleading identified above.  In its Motion to Dismiss, Verizon Defendants expressly preserve defenses related to claims brought against Mr. Douglas and his estate.  (ECF No. 99 at p. 1 n.1.)  Accordingly, for the reasons discussed above, Plaintiff fails to state a claim against Mr. Douglas, his estate, or Ms. Douglas as personal representative.[6]

## IV.    CONCLUSION

For the reasons set forth herein, by separate order, Defendants' Motions to Dismiss (ECF Nos. 99, 113) shall be granted and Plaintiff's pending motions (ECF Nos. 101, 104, 109, 111, 121, 123, 132, 133, 138) shall be denied.

/S/

Date: May 12, 2025

_____
Julie R. Rubin
United States District Judge

---

[6] On April 23, 2025, Plaintiff filed a Motion for Clerk's Entry of Default for Want of Answer or Other Defense alleging that he effectuated personal service of the Substitution Order, Consolidated Complaint, and related case files on April 1, 2025, and that 21 days had passed without Defendant filing a responsive pleading or otherwise defending the case. Per Rule 25, Ms. Douglas was substituted for deceased Defendant Jeffrey Douglas.  Verizon Defendants preserved their defenses to claims brought against Mr. Douglas and his estate.  (ECF No. 99.)  Accordingly, Ms. Douglas was not required to file a responsive pleading, as her defense to the claims asserted against the estate was pending.  The Motion for Clerk's Entry of Default will be denied.